UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 12-10055-JLT-3 |
| | * | |
| JAMES CHAMBERS, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

June 27, 2013

TAURO, J.

I.   Introduction

Defendant James Chambers was indicted on one count of conspiracy to commit robbery affecting interstate commerce in violation of 18 U.S.C. § 1951. Before the court are his Motion for a Bill of Particulars [#62] and Motion to Suppress Items Seized [#63].

II.   Factual Background

   A.   Indictment

The indictment charges codefendants John Salvucci, George Whalen, and James Chambers with conspiring to rob Forest Hills Check Cashing, located in Norwood, Massachusetts. The indictment indicates that the conspiracy began on an unknown date and continued until approximately January 25, 2012.

   B.   Search Warrant

On January 24, 2012, Special Agent Daniel R. Romanzo of the Federal Bureau of Investigation ("FBI") applied to the U.S. District Court for the District of Massachusetts for a

search warrant for Defendant Chambers's residence at 16A Victoria Lane in Stoneham, Massachusetts.[1] The warrant issued that same day. It authorized the search for, among other things, documents or electronic storage devices relating to the conspiracy; restraints, disguises, and burglary tools; and weapons and firearms. Federal agents executed the warrant on January 25, 2012.[2] They recovered brass knuckles, handcuffs, body armor, latex gloves, and ski masks.[3]

Special Agent Romanzo swore out an affidavit in support of the warrant. In the affidavit, he detailed his background in law enforcement. Special Agent Romanzo has worked as a special agent for approximately fifteen years, participating in investigations of drug and firearms trafficking, organized and violent crime, terrorism, and computer crime. Since May 2011, he has worked with the FBI's Violent Crime Task Force, which investigates kidnappings, bank robberies, armored car robberies, and robberies of commercial institutions.

The affidavit indicates that all three codefendants have criminal records that include felony convictions. In particular, Defendant Chambers was convicted in Massachusetts of armed robbery in 1986 and of armed robbery, armed assault with intent to murder, and carrying a concealed firearm in 1980. He was also convicted of six counts of bank robbery in 1989 in federal court.

The affidavit states that the FBI used a cooperating witness ("CW") to obtain evidence regarding the alleged conspiracy. The CW contacted the FBI in January 2012 and alerted agents to a conspiracy led by codefendant Salvucci. In an unrecorded call on January 17, 2012, Salvucci solicited the CW's involvement in the robbery of a Norwood check-cashing business. After some

---

[1] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 [#70].

[2] Def.'s Mot. to Suppress ¶ 2 [#63].

[3] United States's Opp'n Def.'s Mot. to Suppress 9 [#70].

initial hesitation, the CW agreed to participate.

The affidavit specifies that the CW and Salvucci met later that same day. The FBI equipped the CW with an audio-recording device and conducted surveillance. The two discussed the robbery in the CW's vehicle. Salvucci explained that his co-conspirators would "grab" the owner of the check-cashing business in order to override the business's numerous security measures.[4] Salvucci said that his co-conspirators were "real serious guys" and "real capable."[5] Based on his training and experience, Special Agent Romanzo interpreted these statements to mean that the co-conspirators intended to kidnap the business owner and that they had participated in violent crimes in the past, including robberies. Salvucci told the CW that his co-conspirators would "never go back [to prison]. They'll end up dead before they go back."[6]

According to the affidavit, Salvucci and the CW had a second audio-recorded meeting on January 19, 2012. During that meeting, Salvucci said his co-conspirators were "ready to go. They wanna go down there and look at the whole thing on Friday, I mean, Saturday. Saturday morning. They wanna go down and scope the whole thing out." Salvucci described his co-conspirators as "f****** pros. That's all they do. They're f****** pros. They got all the gear in the world."[7]

The affidavit states that FBI agents established surveillance of Salvucci's residence on Saturday, January 21, 2012. Shortly before noon, agents observed a brown pickup truck, registered to Defendant, stop in front of Salvucci's residence. Salvucci got in the truck, and the

---

[4] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 13 [#70].

[5] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 14 [#70].

[6] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 14 [#70].

[7] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 17-18 [#70].

two proceeded to Winthrop, Massachusetts to pick up codefendant Whalen. The three men then drove approximately thirty miles in a snowstorm to Forest Hills Check Cashing in Norwood.

The affidavit describes the codefendants' behavior upon arriving in Norwood. They drove past the business twice and surveyed the general area. Codefendants Chambers and Whalen then entered the check-cashing business. Chambers purchased bubble gum and asked an employee whether the business cashed personal checks. Whalen purchased some lottery scratch tickets. The codefendants then took turns walking around the exterior of the business. Based on his training and experience, Special Agent Romanzo indicated that these actions were "consistent with individuals casing a location to do a robbery."[8]

The affidavit states that Salvucci had a final recorded telephone conversation with the CW two days later. Salvucci said that the robbery would take place, "[j]ust not today or tomorrow."[9]

Based on the information in this affidavit, the magistrate found probable cause to issue the warrant. As indicated previously, the warrant issued on January 24, 2012, and was executed on January 25, 2012.

III. Discussion

    A. Motion for a Bill of Particulars

Defendant seeks detailed information on the statements and events the Government will use to prove the formation and existence of the conspiracy. He argues that the indictment fails to allege any overt acts and that the provided discovery fails to attribute any conduct to him other than driving to the target business on January 21, 2012.

---

[8] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 30 [#70].

[9] United States's Opp'n Def.'s Mot. to Suppress, Ex. 1 ¶ 33 [#70].

"The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy."[10] The district court has discretion to grant or deny a motion for a bill of particulars.[11] Ordinarily, a defendant does not need detailed evidence of a conspiracy to properly prepare for trial.[12] And, because "a conspiracy does not normally occur at only one particular time or place," the indictment need not contain precise dates or locations.[13]

The indictment against Defendant provides sufficient information to allow Defendant to prepare his defense, avoid surprise at trial, and protect against double jeopardy. It specifies the names of his three alleged coconspirators, the general time frame of the conspiracy, the exact location of the conspiracy's target, and all the elements of the offense.[14] The indictment thus provides all required information, and Defendant is not entitled to the details requested.[15]

---

[10] United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989).

[11] Id.

[12] See United States v. Hallock, 941 F.2d 36, 40-41(1st Cir. 1991); United States v. Young & Rubicam, Inc., 741 F. Supp. 334, 349 (D. Conn. 1990); United States v. McCarthy, 292 F. Supp. 937, 940 (S.D.N.Y. 1968); United States v. Bozza, 234 F. Supp. 15, 17 (E.D.N.Y. 1964); United States v. Martinez, No. 11-CR-10195-RWZ, 2013 WL 49767, at *2 (D. Mass. Jan. 2, 2013); United States v. Stone, No. 2:10-CR-20123, 2011 WL 3348051, at *5 (E.D. Mich. Aug. 3, 2011); United States v. Stryker Biotech, LLC, No. 09-CR-10330-GAO, 2010 WL 2900684, at *5 (D. Mass. July 21, 2010); United States v. Nieves, No. 3:97CR238(AHN), 1998 WL 928413, at *5 (D. Conn. Dec. 3, 1998).

[13] Hallock, 941 F.2d at 40-41.

[14] "Evidence of an overt act is not required to establish a Hobbs Act conspiracy." United States v. Palmer, 203 F.3d 55, 63 (1st Cir. 2000).

[15] See Hallock, 941 F.2d at 40 ("By informing [Defendant] that he was accused of a conspiracy in 1988, in Maine, to distribute cocaine and by listing the names of the four principal coconspirators, the indictment gave [Defendant] significant information as to the conduct out of

B.   Motion to Suppress

A warrant application "must demonstrate probable cause to believe that a particular person has committed a crime–'the commission element'– *and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched–'the "nexus" element.' "[16] A reviewing court must give "great deference" to the issuing magistrate's determination of probable cause.[17] The reviewing court must examine the supporting affidavit "in a practical, common-sense fashion and accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts."[18] The affidavit must provide a "substantial basis" for the magistrate's conclusion that there is a "fair probability" that evidence of a crime will be found at a particular location.[19] Because courts have a strong preference for warrant searches, a reviewing court will ordinarily defer to the magistrate's probable cause determination even in a "doubtful or marginal case."[20]

---

which the indictment arose-namely, his alleged agreement and relationship with these four men aimed at distributing cocaine."); see also Bozza, 234 F. Supp. at 17 ("[T]he defendant is not entitled to know the date on which he is alleged to have entered the conspiracy because it is minutia which is not necessary to the preparation of his case but which might seriously hamper or foreclose the prosecutor in the proof of his case.").

[16] United States v. Zayas-Diaz, 95 F.3d 105, 110-11 (1st. Cir 1996) (quoting United States v. Fuccillo, 808 F.2d 173, 175 (1st Cir. 1987)).

[17] United States v. Leon, 468 U.S. 897, 914 (1984).

[18] United States v. Strother, 318 F.3d 64, 67 (1st Cir. 2003) (alteration in original) (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)).

[19] United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

[20] Zayas-Diaz, 95 F.3d at 111.

Defendant does not challenge the magistrate's determination that the affidavit provided probable cause to believe he had committed a crime. The affidavit adequately details a robbery conspiracy led by codefendant Salvucci and assisted by two individuals with significant experience and criminal backgrounds. Its description of the site visit to the target business sufficiently links Defendant to the alleged criminal activity. Thus, this court need only consider whether the affidavit sufficiently established the "nexus" element.

"With regard to the 'nexus' element, the task of a magistrate in determining whether probable cause exists is 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.' "[21] Furthermore, "[t]he nexus between the objects to be seized and the premises searched need not, and often will not, rest on direct observation, but rather 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].' "[22]

Considering the affidavit in a common-sense and practical manner, this court concludes that it provided a substantial basis for the magistrate's determination of probable cause. The affidavit indicated that three individuals planned to rob a check-cashing business protected by significant security measures and intended to kidnap the business owner in furtherance of their scheme. The affidavit also alerted the magistrate to Defendant's criminal history, including his

---

[21] United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (quoting Gates, 462 U.S. at 238).

[22] Id. at 88 (alteration in original) (quoting United States v. Charest, 602 F.2d 1015, 1017 (1st Cir. 1979)).

convictions for carrying a concealed firearm and for armed robbery and assault. Based on this information, the magistrate could conclude that Defendant would have a firearm or some other dangerous weapon in his home in preparation for the alleged robbery.[23]

Furthermore, the affidavit provided sufficient information for the magistrate to conclude that the robbery would occur imminently and that the codefendants had undertaken all necessary preparations. Salvucci informed the CW that Defendant and Whalen were "ready to go" and that they had "all the gear in the world." From these statements, the magistrate could infer that Defendant had the materials necessary to conduct a sophisticated and potentially violent robbery. The magistrate could reasonably infer that Defendant would keep at least some of the necessary materials at his residence.[24] The magistrate had a substantial basis to conclude that there was a fair

---

[23] See, e.g., United States v. Steeves, 525 F.2d 33, 38 (8th Cir. 1975) ("[P]eople who own pistols generally keep them at home or on their persons."); Bastida v. Henderson, 487 F.2d 860, 861-63 (5th Cir. 1973) (affirming magistrate's finding of probable cause to search suspect's residence for gun used in armed robbery); United States v. Ingram, No. 02-10360-RWZ, 2003 WL 21058181, at *2 (D. Mass. May 9, 2002) ("[I]t is reasonable to infer that one's home would be used to keep and hide a gun and other paraphernalia employed in a crime that occurred elsewhere.").

[24] See United States v. Williams, 544 F.3d 683, 688 (6th Cir. 2008) (inferring that "a bank robber would keep the proceeds and instrumentalities of his robbery in his home"); United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) ("[T]he other items sought, clothing and firearms, are also the types of evidence likely to be kept in a suspect's residence."); Steeves, 525 F.2d at 38 ("[T]here was little reason to believe that any of the bank's money or the money bag would still be in the home. But, the same concession cannot be made with respect to the revolver, the ski mask, and the clothing. The ski mask and the clothes were not incriminating in themselves, and apart from his prior felony record possession of the pistol was not unlawful in itself or particularly incriminating."); Commonwealth v. Cinelli, 449 N.E.2d 1207, 1216 (Mass. 1983) ("We believe that the items specified in the warrant and seized during the search were the type of things that reasonably might be expected to be located in the residence of a person who had participated in an armed robbery.").

probability that evidence of the conspiracy would be found at Defendant's residence.[25]

IV.     Conclusion

For the foregoing reasons, Defendant's Motion for a Bill of Particulars [#62] is DENIED. The indictment contains sufficient information to notify Defendant of the charges against him and allow him to adequately prepare for trial. Defendant's Motion to Suppress Items Seized [#63] is also DENIED. The warrant affidavit supports the magistrate's finding of probable cause.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge

---

[25] The court also notes that, even if the affidavit did not provide probable cause to issue the warrant, the good faith exception to the exclusionary rule would apply. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Diaz, 841 F.2d 1, 5 (1st Cir. 1988) (quoting United States v. Leon, 468 U.S. 897, 926 (1984)). Defendant argues that Special Agent Romanzo misled the magistrate by taking Salvucci's statements out of context. But the fact that Defendant interprets the recorded conversations differently than Special Agent Romanzo does not suggest that he acted dishonestly or recklessly. Defendant has not directed the court to any evidence that would support such a suggestion.